JESSE B. CLEMENTS, PLAINTIFF IN ERROR, *v.* DANIEL BERRY.

Where the marshal of the United States had levied an execution upon certain property under a judgment in the Circuit Court, which was taken out of his custody by a writ of replevin issued by a State court, and the Supreme Court of the State decided adversely to the claim of the marshal, it is within the jurisdiction of this court to review that decision.

It is the uniform practice of the federal and State courts in Tennessee to test executions as on the first day of the term; and as between creditors, the lien attaches equally to all the judgments entered at the same term.

Where a judgment by default, in an action upon a promissory note, was entered upon the 8th day of the month, but not fully entered up as to the amount due until the 10th, and upon the 10th, a few minutes before the court opened, the debtor recorded a deed of trust conveying away all his property, this deed cannot defeat the lien of the judgment.

The judgment by default created the lien; it was a mere clerical duty to calculate and enter up the amount due.

To note the precise time when deeds are left for record is attended with no difficulty as between deeds; but to settle the exact comparative creation of a lien between a recorded deed and a judgment by a court is attended with much embarrassment. The timepiece of the register cannot settle the validity or invalidity of a judgment lien.

The process act of 1828, passed by Congress, refers to State laws for the creation and effect of liens; but the preparatory steps by which they are created depend upon the rules adopted by the United States courts.

THIS case was brought up from the Supreme Court of Tennessee, by a writ of error issued under the twenty-fifth section of the Judiciary Act.

Clements, the plaintiff in error, was the marshal of the United States District of Middle Tennessee.

The action was a replevin brought by Berry against Clements, in the Circuit Court of Davidson County, Tennessee (State court), and upon the trial in that court the following statement of facts was agreed upon.

## DANIEL BERRY *v.* J. B. CLEMENTS.

### Replevin. — Circuit Court, Davidson County.

In this case the defendant comes and defends the wrong and injury, when, &c., and says he is not guilty in manner and form as the plaintiff in declaration hath alleged, and of this he puts himself on the country, and the plaintiff also; and the following facts are agreed upon between the parties: — On the 20th of January, 1848, William H. Inskeep, Albert Moulton, Edward D. Woodruff, and John Sibley, citizens of the State of Pennsylvania, trading in partnership under the firm Inskeep, Moulton, & Woodruff, brought an action of debt against Charles F. Berry, a citizen of the State of Tennessee, and resident of Nashville, in the Circuit Court of the United States for the District of Middle Tennessee, upon several notes of

hand executed by said Berry, payable to said Inskeep, Moulton, & Woodruff; the writ and copy of the declaration was served by the marshal upon the said Charles F. Berry on the 20th of January, 1848. The writ was returned to the court with the declaration at March term, 1848, and the following entries were made on the rule docket, and minutes, as by the copy hereunto annexed, and made part of the case agreed, marked A: Inskeep, Moulton, & Woodruff, debt, 20th January, 1848, executed and delivered defendant a copy of declaration. Declaration filed March 1st, 1848; ruled for plea by 8th March; no plea being filed by attorney, takes judgment by default. Circuit Court of United States, Middle Tennessee District. Thursday, March 9th, 1848, court adjourned until to-morrow morning, 10 o'clock. Friday, March 10th, 1848, court met according to adjournment. William H. Inskeep, Albert Moulton, Edward W. Woodruff, and John Sibley, trading under the firm of Inskeep, Moulton, & Woodruff, *v.* Charles F. Berry. The plaintiffs appear by their attorney, and a judgment by default having been taken in this cause on the 8th of March, 1848, and no motion having been made to have the same set aside, it is therefore considered by the court that said judgment by default be affirmed, and that the plaintiffs recover against said defendant $ 1,316.68, their balance of debt in the declaration mentioned, and the further sum of $ 44.22, their damage sustained by reason of the detention thereof, and their cost in this behalf expended, and that execution issue. Session of court commenced on the 6th March, 1848. A true copy. J. McGavock, clerk, by G. M. Fogg, deputy. Berry's deed received at register's office 51 minutes after 9, on the 10th March. Inskeep & Co. Judgment obtained about half-past ten o'clock same day.

The said Circuit Court of the United States commenced its session on Monday, the 6th day of March, 1848. On the 10th day of March, 1848, Charles F. Berry, the debtor, executed a deed of trust to the plaintiff in this cause, a copy of which is hereunto annexed, and made a part of this case agreed:

" Know all men by these presents, that I, Charles F. Berry, of the county of Davidson, and State of Tennessee, of the one part, and Daniel Berry, of the county and State aforesaid, of the other part, witnesseth, that I, the said Charles F. Berry, for and in consideration of the sum of $ 5, to me in hand paid by the said Daniel Berry, and the other consideration hereinafter mentioned, hath this day bargained, sold, transferred, and conveyed, and do by these presents bargain, sell, transfer, and convey, to the said Daniel Berry all my stock of dry goods of every description, and all sorts of ware now in

the storehouse occupied by me on the public square in Nashville, and also in a storeroom occupied by me in Nashville, amounting together to the sum of about $ 12,000, as per invoice book made out this day; three horses, one negro man slave, named Abraham, one buggy, all my accounts of every description, and the book containing the same; all the notes, &c., that are due me, and also my interest, whatever it may be, in the unsettled business of the firm of A. D. & C. F. Berry; also, all the interest I have in and to the following-described lots or pieces of ground, viz. lots No. 5 and 6, as described in a plat made by C. W. Nance, of lots adjacent to the town of Nashville, on Cherry Street, fronting thirty feet each on Cherry, and also lots A and B, in No. 20, in the plan of South Nashville, and lots No. 3 and 4 adjoining F. B. Fogg's lot on Cherry Street. To have and to hold said property, of every description, to the said Daniel Berry, his heirs and representatives for ever. I, the said Charles F. Berry, bind myself, my heirs and representatives, to warrant and defend the title to the same, or any part thereof, to the said Daniel Berry, his heirs and assigns, against the lawful claims of all persons whomsoever. But this deed is made for the following use and trust, and for no other purpose; that is to say, that the said Daniel Berry and A. D. Berry are my accommodation indorsers on the notes, most of them, embraced in schedule A, and whereas I am anxious to secure them, and also the payment of all the claims therein specified, to the persons to whom said claims are due, and also to secure the claims specified in the schedule B to the person therein named, which schedules are to be registered with this deed. Now, if I, the said Charles F. Berry, shall well and truly pay off and satisfy said debts mentioned in schedules A and B on or before the 1st day of December, 1849, then this deed to be void; but if I shall fail to do so, then the said Daniel Berry shall sell whatever remains of said property upon such terms as will be most for the interest of the creditors, and apply the proceeds to the payment, first, of the debts mentioned in schedule A, until they are all paid and satisfied; and, secondly, to the payment of the debts mentioned in schedule B, if there shall be enough after paying the expenses of executing this trust; if not, to make a *pro rata* distribution of the proceeds amongst them. In order to make it more certain that said debts shall be paid within the time specified, I hereby authorize the said Daniel Berry, as trustee, to take immediate possession of all the above-described property, and that he may proceed to sell the same upon such terms as will make it yield the most money; and that he take possession of all my books of accounts, notes, &c.,

and proceed to collect the debts due me as speedily as he can, and to apply the proceeds of the goods and property, and the money collected by him, to the payment of the debts in the order above specified; but that he shall not be forced to make a general sale of said property, goods, &c., until the expiration of said time.

" In testimony whereof, I, the said Charles F. Berry, have hereunto set my hand and seal, this the 10th day of March, 1848.

" C. F. BERRY."

"*State of Tennessee, Davidson County.*

" Personally appeared before me, Robert B. Castleman, clerk of the County Court of said county, the within-named C. F. Berry, the bargainer, with whom I am personally acquainted, and who acknowledges that he executed the within deed of trust for the purposes therein contained.

" Witness my hand at office, this 10th day of March, 1848.

" R. B. CASTLEMAN."

"*State of Tennessee, Davidson County.*

"*Register's Office, March* 11, 1848.

" I, William James, register of said county, do hereby certify that the foregoing deed of trust and certificate are duly registered in my office, Book No. 10, pages 574, 575, and that they were received March the 10th, 1848, $9\frac{51}{60}$ o'clock, A. M., and entered in Note Book 2, page 20.

" WILLIAM JAMES."

And the same was lodged for registration in the register's office, at the time mentioned in the memorandum upon said deed, on the 20th of March, 1848; an execution, being a writ of *fieri facias*, issued upon said judgment, and came to the hands of the marshal on the 21st of March, and by him, on the 24th of March, was levied upon the goods, wares, and merchandise particularly specified in the levy, a copy of which is hereunto annexed, marked C, together with the return of the marshal.

" The President of the United States to the Marshal of the Middle District of Tennessee, greeting:

" You are hereby commanded, that of the goods and chattels, lands and tenements, of Charles F. Berry, in your district, you cause to be made $1,379.85, which William H. Inskeep, Albert Moulton, Edward W. Woodruff, and John Sibley, trading under the firm of Inskeep, Moulton, & Woodruff, in the Circuit Court of the United States for the Eighth Circuit, in the Middle

34 *

District of Tennessee, recovered against him for balance of debt, damages, and cost, in a certain action of debt in the said court, lately determined, wherein the said Inskeep, Moulton, & Woodruff were plaintiffs, and said Charles F. Berry was defendant, whereof said defendant is convicted, as appears of record, and have the said money ready to render before the judge of our said court at Nashville, on the first Monday in September next; herein fail not, and have then and there this writ.

"Witness the Honorable Roger B. Taney, Chief Justice of the Supreme Court of the United States, this first Monday in March, A. D. 1848, and in the seventy-second year of our independence.      Jacob McGavock, *Clerk.*"

"Issued March 20th, 1848; came to hand 21st March, 1848; levied this *fieri facias* upon the following goods, wares, and merchandise, as the property of Charles F. Berry, this 24th day of March, 1848. Then follows a long list of goods of several pages, specifying each article, item by item, amounting in all to the sum of $ 2,549.11; the prices annexed to the foregoing list of goods were the invoice prices as furnished by the defendant, but the defendant and myself not agreeing as to the present value of the goods, we called in the following persons, merchants of Nashville, to wit, John B. Johnston, C. Connor, B. F. Shields, and A. J. Duncan, who valued the goods to be worth $ 1,402, or 55 cents in the dollar upon the invoice prices.      J. B. Clements,
*Marshal of the U. S. District of Middle Tennessee.*"

"The sale of said goods, wares, and merchandise was stopped by a writ of replevin from the Circuit Court of Davidson County, sued out at the instance of Daniel Berry, against me, as marshal; which writ was executed upon me by the sheriff of Davidson County, on the 4th day of April, 1848, and the goods delivered up to said Daniel Berry, by the advice and consent of the plaintiff's attorneys.   September 4, 1848.
     "J. B. Clements, *M. M. D. T.*

"A true copy.      J. McGavock, *Clerk.*"

Marshal's fees, commissions on the amount of this execution, by G. M. Fogg, deputy, say on $ 1,360.90, at 2¼ per cent.   .   .   .   .   .   .   $ 34.02
Serving this *fieri facias*,   .   .   .   .   .   .   2.00

                                      $ 36.02

These goods were in the store of Charles F. Berry, and had

not been removed therefrom, but Daniel Berry, the trustee, was at the store at the time of the levy, and stated that the said Charles F. was his agent, and the trustee claimed the goods as included in the deed of trust; the goods levied upon were taken possession of by the marshal, and after the writ of replevin was served, they were delivered up by the marshal to Daniel Berry; the goods, wares, and merchandise levied upon were, before the execution of the deed of trust aforesaid, the property of Charles F. Berry. If, upon the above facts, the law is with the plaintiff, then judgment is to be rendered for him, with costs; if for the defendant, the marshal, then judgment is to be rendered for him against the plaintiff and his security, for the amount of the judgment in the federal court; interest and cost as taxed by the federal court.

F. B. FOGG, *for Defendant.*

EWING & WHITWORTH, *Attorneys for Plaintiffs.*

Upon this agreed state of facts, the Circuit Court of Davidson County were of opinion that the law was with Clements, the defendant, and gave judgment accordingly. Berry carried the case to the Supreme Court of Errors and Appeals of Tennessee, where the judgment of the Circuit Court was reversed. Clements sued out a writ of error under the twenty-fifth section of the Judiciary Act, and brought the case up to this court.

It was argued by *Mr. Fogg,* for the plaintiff in error, and *Mr. Andrew Ewing,* for the defendant in error.

*Mr. Fogg,* for plaintiff in error.

The act of Congress of 8th May, 1792, requires all writs and processes, &c. to bear teste of the Chief Justice of the Supreme Court, and the uniform practice in the State and Federal courts in Tennessee is to teste the executions as of the first day of the term from which the execution issues. Executions are liens on personal property, and relate to their teste. When a judgment awards an execution, what does it award? A process that bears teste from the first day of the court. In Johnson *v.* Ball, 1 Yerger, 291, it was decided, and is the settled law of Tennessee, that the statute 29 Charles II. § 3, providing that the personal property of a debtor should only be bound from the delivery of the execution to the sheriff, is not in force in Tennessee, but that it bound as at common law. Preston *v.* Surgoine, Peck, 80. It is true that in the case of Murfree's Heirs *v.* Carmack, 4 Yerger, 270, it was decided that, where a mortgage deed for land was registered on the same day judgment was obtained, and no proof was given as to

the precise time of the judgment, the mortgage would take preference of the judgment, the judgment being only a lien from the day of its date; but at the same term of the court, in the same book, p. 358, the same court decided, in the case of Porter v. Earthman, that judgments rendered upon different days of the same term relate to the first day of the term as between creditors, although the records may show the day upon which each was rendered. Can the statute requiring the minutes of the court to be read every day, and to be signed by the judge, be intended for any other purpose than to prevent errors and mistakes, and can such statutes have any effect upon the lien of executions and judgments in the federal court? The same reason applies to prevent the debtor from giving a preference by deeds of trust to other creditors, as would apply among creditors themselves. The debtor knew a judgment by default had been rendered against him on the 8th of March; that it would be absolute if he did not set it aside; and he chose to give a preference by deed on the 10th of March. Is it doing injustice to third persons, the creditors provided for in that deed, to say, that the judgment and execution would overreach that debt?

In the case of Farley v. Lea, 4 Devereux and Battle's Law Reports, p. 169, the Supreme Court of North Carolina decided, that judgments of a court of record, on whatever day of the term they may be rendered, in law relate to, and are considered judgments of, the first day of the term, so that an execution tested on the first Monday of a court, being the 8th of May, 1833, upon a judgment rendered on the 12th of May, 1833, would overreach a deed of trust executed and registered on the 9th of May, 1833. Judge Gaston in his opinion says, that this legal relation of a judgment to the first day of the judicial term is as perfect as was at common law the relation of an act of Parliament to the first day of the legislative session. The law of relation applicable to judgments has been in part changed in that country by the statute of 29th Charles II.; but in this State (North Carolina), and also in Tennessee, it remains as it was at common law. He also says, that in England the statute 29 Charles II. has provided that, against purchasers, no writ of execution shall bind the goods, but from the time such writ was delivered to the sheriff. There being no such statute in North Carolina or Tennessee, the writ of execution binds against all persons from the teste, as it yet does in England, where purchasers are not concerned. The teste of our writ of *fieri facias*, being from the first Monday in March, 1848, the execution overreached the deed of trust. In Coutts v. Walker, 2 Leigh, 268, the Court of Appeals of Virginia decid-

ed that a judgment rendered on the 2d of March, 1821, the term commencing the 21st of February preceding, overreached a deed of trust executed on the 28th of February, and registered the 2d of March. See 4 Comyn's Digest, *Execution,* D. 1, and authorities there cited. In Wynne *v.* Wynnes, 1 Wilson, 39, the reason of the rule is stated : " The general intendment·of the law is, that every judgment has relation to the first day of the term, because the court cannot determine every suitor's case in one day." Another reason, as stated by the judge in 2 Leigh, may have been to prevent debtors from withdrawing their property from the effects of judgments against them, by alienations made after it was known that, in the course of a term, a judgment would pass.

The practice of the Circuit Courts in Tennessee is regulated by rules which have been in force for a long period. The rule applicable to the suit upon which the execution in this case was founded provides, " that, if the pleadings are not filed by the defendant on or before the first day of the term, the court may on that day fix the time when the pleadings are to be closed, and judgments entered." The day fixed for closing the pleadings was the 8th of March, and judgment by default was then entered, and the only thing remaining to be done was to draw that judgment out formally by the clerk, and calculate the interest, which was not done, owing to a press of business by the clerk, until the 10th of March, the day of the execution of the deed of trust. It is believed that the judgment by default on the 8th of March was not, in the words of the Supreme Court of Tennessee, " wholly inoperative." It might have been so, had it not been·affirmed on the 10th of March, during the same term ; but the entry of the last date refers to the judgment of the 8th, is founded upon it, adopts and affirms it. It is true, if no judgment had been entered during the same term, and the cause had been continued, and the final judgment had been entered at a subsequent term, there would have been no relation to the preceding term, and the execution would then have been tested on the first day of the term, when the final judgment was entered.

All the cases decided upon the subject of the lien of executions in Tennessee,-except two, are collected in Meigs's Digest, title *Execution,* 959. Those two are the present case, and that of the Union Bank *v.* McClung, which will be reported in 9 Humphreys, p. 91, and is upon the relation of an alias execution. The English doctrine is in 2 Tidd's Practice, 998, where he says the *fieri facias* must be tested in term time, and made returnable in term time. By the law of Tennessee, and the practice of the federal courts from their first establishment, all execu-

tions bear teste from the first Monday of the term from which they purport to have been issued, and are made returnable to the first Monday of the succeeding term. There is no difference in the form of the process from the State and federal courts, except that the former are tested by the clerks, and the latter, by the act of Congress of the 8th of May, 1792, bear teste of the Chief Justice of the Supreme Court of the United States.

The plaintiff in error submits that the execution in the cause which came to his hands, authorized him to levy upon chattels belonging to the defendant on the 6th day of March, 1848, the first day of the term, or at all events upon the personal property that he owned on the 8th of March, when the judgment by default was obtained.

*Mr. Andrew Ewing*, for defendant in error.

There are two questions presented for consideration in this court: —

1st. Whether the court has jurisdiction of the cause?

2d. Which had the prior lien, the execution or the deed?

The defendant in the State court was the marshal, and acting under the authority of the Circuit Court of the United States in levying the execution; but this suit does not dispute his authority or deny his right to its proper exercise; he is sued as a trespasser, for going beyond even the claimed limits of his legal power. If the property levied upon belonged rightly to Daniel Berry, then he was improperly exercising his power, and this was a question of law and fact equally competent for decision in the federal or State tribunals. If the facts of the case proved that any question was raised in the State court in regard to the validity of the judgment or execution under which the marshal acted, or the legal authority of the marshal to levy on the property of the defendant in the execution, then the jurisdiction would have been clear in a decision against their validity; but here the only question decided by the State court was the title of the property levied upon. The defendant in error had no forum for the ascertainment of his rights but the State tribunal, and as he did not question the validity of the judgment or general authority of the marshal, the case does not come within the spirit or the letter of the Judiciary Act of 1789.

2d. The question as to the priority of the liens is, under the process act of 1828, entirely dependent upon what may be the law of Tennessee on this subject, and was therefore a peculiarly fit subject for decision in the State court. It has long been held in Tennessee, that the statute of 29 Charles II., in regard to the lien of judgments and executions, is not in force in that State; the lien of an execution remains, therefore, as at com-

mon law, subject, however, to the statutory modifications of that lien. We find it generally stated, in the earlier common law authorities, that the lien of an execution commenced from its teste, and, as the whole term was regarded as one day, the execution was tested of the first day. The general rule of law, however, was, that fictions which were intended for the attainment of justice never should extend to work an injury. See 3 Bl. Com. 43. Whenever, therefore, a fiction would work injustice, because of its inconsistency with the truth, courts of law ought to look to the real facts. See 3 Bl. Com. 317; 2 Burr. 962. In accordance with this rule of law, it had repeatedly been decided in England that anterior to the statute of 29 Charles II. the lien of an execution only commenced, as against *bonâ fide* purchasers from the debtor, from the true date of the award of the execution. See 8 Coke, 171; Cro. Eliz. 174; 2 Showers, 480; Bingham on Executions, 190. These authorities have been recognized in Tennessee. See 1 Yerg. 292; 7 Yerg. 529. The awarding of an execution in England is a judicial act, and the forms of all of our judgments in Tennessee award an execution in pursuance of the English practice; until the rendition of the judgment the issuance of an execution would be a void act, and would have no foundation on which to rest. The lien of a judgment in Tennessee has been confined by statute to the date of its rendition. See Nich. & Car. 419. It would be singular, therefore, to hold that the execution (which is the incident) had a superior lien to the judgment, which is the principal. In accordance with this view, the Supreme Court of Tennessee say, in this very case: "Under our practice, the proceedings of the term are, contrary to the practice of the common law, separated and distinguished by the division of days; the record shows the day on which the judgment is rendered, and the date thereof is indorsed upon the execution; to the end, perhaps, that the officer, charged with the execution of the process, might be enabled more easily to discriminate between such alienations of property as were valid, and those which were void as against the judgment and execution. Inasmuch, therefore, as under our law the precise day on which judgment is rendered is fixed and ascertained by the record, it necessarily follows, upon common law principles, that it cannot relate beyond that day as against *bonâ fide* purchasers for valuable consideration; nor can the execution issued thereon, if tested of the same term as the judgment, as against such purchaser, relate beyond the date of the judgment; and as the hour of meeting of the court on each day of the term, under our practice, is also ascertained by the record, the relation of the judgment or execution cannot extend beyond that hour."

This investigation into the fraction of a day, for the ascertainment of truth, where there is record evidence to be obtained, is amply supported by the authorities. See 2 Stark. 787; 7 Com. Dig. 398; 2 B. & A. 586.

Mr. Justice McLEAN delivered the opinion of the court.

This case is brought here by a writ of error to the Supreme Court of the State of Tennessee, under the twenty-fifth section of the Judiciary Act.

The jurisdiction of this court is the first question to be considered. The plaintiff sets up a lien on certain personal property, under a judgment rendered by the Circuit Court of the United States, held for the Middle District of Tennessee. The defendant asserts a lien under a deed of trust for the property, from Charles F. Berry, and the Supreme Court of Tennessee held that the lien of the deed was paramount to that of the judgment. This brings the case within the twenty-fifth section, as the decision was against the right asserted by Clements, under the authority of the United States.

The judgment was obtained by the firm of Inskeep, Moulton, & Woodruff, at March term, 1848, for $1,316.68, against Charles F. Berry. The declaration was filed on the 1st of March; rule for plea by the 8th of March; no plea being filed within the rule, a judgment was entered by default. On the 10th of March "the plaintiffs appear by their attorney, and a judgment by default having been taken in this cause on the 8th of March, 1848, and no motion having been made to have the same set aside, it is therefore considered by the court that said judgment by default be affirmed," &c.

The deed of trust was received at the register's office fifty-one minutes after nine, A. M., on the 10th of March, the same day the deed bears date. The court, it seems, was opened on the 10th, at ten o'clock, A. M.; so that the deed was deposited with the register nine minutes before the court opened on that day. The register, by law, is required to enter on a record the exact time that an instrument is filed for record, and the lien attaches from such entry.

Execution was issued on the judgment, tested the first Monday of March, the day at which the term commenced. It was levied upon part of the goods assigned in the deed of trust, and those goods were replevied by Daniel Berry, the trustee, from Clements the marshal.

It is the uniform practice of the federal and State courts of Tennessee, to test executions as on the first day of the term; and the lien is held equally to attach to all the judgments, as regards creditors, entered at the same term. This rule would

not apply, perhaps, to a *bonâ fide* purchaser of real estate for a valuable consideration, beyond the day on which the judgment was rendered. It is admitted that the statute of 29 Charles II., as to the liens of judgments and executions, is not in force in Tennessee; and that the lien is regulated by the common law, modified, to some extent, by statutes. As against a *bonâ fide* purchaser of personal property, the lien would not attach prior to the award of execution. But the trustee in this case cannot be considered a purchaser, as the assignment was made to him, not on a purchase for a valuable consideration, but for the benefit of certain creditors.

It would present a singular anomaly in judicial proceedings, if the fruits of a judgment could be defeated by a transfer of all the property of the defendant, on the day of its rendition; and with the express view of avoiding the claim of the plaintiff in the judgment, by giving a preference to other creditors. That such an assignment would be fraudulent, as tending to delay and defeat creditors, is clear, but no such defence was made in the State court.

The decision must turn upon the effect of the entries made on the minutes of the Circuit Court. The term of the court commenced on the 6th of March. The declaration was filed on the 1st of March, and a rule for plea was taken in court by the 8th. The rule of court provides, that if the pleadings are not filed by the defendant on or before the first day of the term, the court may on that day fix the time when the pleadings are to be closed and judgment entered.

The plea not being filed within the rule, a judgment by default was entered. Now a judgment by default is interlocutory or final. When the action sounds in damages, as covenant, trover, trespass, &c., it is only interlocutory, that the plaintiff ought to recover his damages, leaving the amount of them to be afterwards ascertained. 1 Tidd's Pr. 568. But where the amount of the judgment is entered by the calculation of the clerk, no further steps being necessary, by a jury or otherwise, to ascertain the amount, the judgment is final. And of this character was the judgment entered on the 8th of March. The action was debt, brought upon several notes of hand; the default admitted the execution of the notes, and the judgment which followed was final, leaving the clerk to make it up in form. The affirmance of this judgment on the 10th of March was unnecessary, as the judgment of the court on the 8th concluded the matter in controversy. It was a mere clerical duty to make the calculation and enter the judgment in form; and the entry on the 10th can be considered, in regard to the lien in question, in effect as nothing more than

the performance of this clerical duty, which had been author-
ized by the entry on the 8th. It was an affirmance of that
which already had been fixed, by the judgment of the court.
What remained to be done was matter of form, as it added
nothing to the legal effect of the judgment by default. Had
the defendant been called and a default entered against him,
the case would have stood for judgment at a future call of the
docket. But under the rule of the court, "the pleadings were
to be closed on the 8th and judgment entered." The de-
fendant failed to plead, and a judgment by default conse-
quently followed. The action being debt, founded upon notes
of hand, which were admitted to be genuine by the default, the
court saw that no inquiry was necessary, and the judgment
was therefore directed to be entered. That judgment was
final according to the forms of entering judgments at the com-
mon law. The omission by the clerk to make the calculation
of the amount of the judgment, and enter it in form, on the
8th of March, was supplied by the entry on the 10th. Such
entry, therefore, we think, may be considered as having relation
to the first judgment.

It is said to be a legal absurdity to suppose that the lien of
the execution can attach prior to the judgment. An execution
can be of no validity which has not a judgment to support it.
But the judgments entered on the last day of the term, by the
law of Tennessee, have relation to the first day of the term, so
as to place all the judgments entered at the term on an equal-
ity in regard to liens. This it is said is proper to do equal jus-
tice to creditors, whose judgments were necessarily entered on
different days of the term, from the arrangement of the causes
on the docket. But it is said, that a *bonâ fide* purchaser for a
valuable consideration would limit the lien of the judgment
and execution to the time the judgment was rendered. If this
be so, it is not perceived how the principle can be applied to
the case before us, unless the defendant in error be considered
a *bonâ fide* purchaser. He cannot place himself in that atti-
tude. He holds the property in trust for the creditors named,
having paid at the time no consideration for it; and having, as
may be presumed from the circumstances, a knowledge that
the assignment was made to avoid the effect of the judgment
against the assignor. It would be difficult to maintain that
this was a *bonâ fide* transaction, and especially that it was en-
titled to the favorable consideration of the court. In no sense
can it be considered a *bonâ fide* sale for a valuable considera-
tion. The trustee is made the agent to pay the creditors
named, and he represents their interests as creditors. But if
the property had been sold *bonâ fide*, from the effect of the

Clements *v.* Berry.

judgment by default, and the relation to it of the formal judgment of affirmance subsequently entered, the lien would attach from the judgment on the 8th.

We admit that the lien of the judgment and execution in the federal courts arises under the State laws; and that the lien may be considered as a rule of property, and a rule of decision under the thirty-fourth section of the Judiciary Act of 1789. But the preparatory steps, by which the judgment is obtained and the lien established, depend upon the practice of the court; and that practice is settled by the federal courts, and not by the courts of the State. The process act of 1828 " adopted the forms of mesne process, except the style and forms and modes of proceeding in suits in the courts of the United States held in those States, &c., subject, however, to such alterations and additions as the said courts of the United States respectively shall, in their discretion, deem expedient, or to such regulations as the Supreme Court shall prescribe."

The entry by the register of the precise time at which all instruments are deposited with him for record, as required by the act of Tennessee, is no doubt a very proper regulation. It is salutary in relation to instruments deposited for record on the same day. In such cases the priority of time may be ascertained with certainty; but when the fractions of a day are to be compared, under such entries, to a judgment lien, the propriety of the rule is not so apparent. The case before us would present a point of no small difficulty. From the entry, the trust deed appears to have been deposited for record nine minutes before the court was opened. And this is to render inoperative the lien of the judgment. Now, how is the fact to be ascertained with certainty? Where shall the exact standard of time be found. A variation of nine or ten minutes is not uncommon in chronometers; and the timepiece of the register, it is supposed, could have no exclusive claim to regulate judgment liens. Whether good or bad, it would answer the purpose designed by showing the priorities of instruments left for record. But the test in regard to judgment liens would be uncertain and unsatisfactory. As a rule of property it would seem to be, at least in many cases, impracticable. How can one, five, or ten minutes be ascertained with the requisite certainty, to lay the foundation of a right? It would hardly be contended that the entry of a ministerial officer, though made by authority of law, should limit or defeat a judgment lien in such a case. No other decision of the Supreme Court of Tennessee than the one now before us is applicable to this question. And if the case to be reviewed is to constitute the rule for our decision, as insisted, the power of revision would be useless.

Whilst we follow the construction of a State statute, established by the Supreme Court of the State, care must be taken that our jurisdiction and practice shall not be limited or controlled by the statutes or decisions of the State, beyond the acts of Congress.

The judgment of the State court is reversed, and the cause is remanded to that court for further proceedings in conformity with this opinion.

Mr. Chief Justice TANEY, Mr. Justice CATRON, Mr. Justice DANIEL, and Mr. Justice NELSON dissented.

Mr. Justice CATRON.

By rule of court made when only one term was held in the year for the Districts of Tennessee, the United States Circuit Court adopted a rule requiring a copy of the declaration to be sent out with the writ, in all cases of suits on written agreements for the payment of money, where the plaintiff desires to obtain judgment at the return term. If a copy of this declaration is served with the writ on the defendant thirty days before the court commences, then the defendant is required to plead before the first day of the term; and if he fails to do so, it is the duty of the clerk to enter judgment by default at his office. This fact he reports to the court in all cases. And then such further time is given for making up the pleadings as may be deemed proper by the court itself; thus extending the time usually three days. But at March term, 1848, only two additional days to plead were allowed.

This office judgment has no force in itself, further than to speed the final judgment. It stands over, like other causes, triable on an issue. When it is reached on the docket in due course, a jury inquires of damages; or if the sum be certain, then a regular and binding judgment is entered of record by the court.

An execution is uniformly awarded in terms by the final judgment, and to which the execution on its face refers, by a brief recital.

To this award of execution the *fieri facias* relates, and binds personal property of the defendant.

The United States courts are governed by the State laws creating a lien; and the State laws are settled by uniform adjudications that the lien attaches by a final judgment and award of execution. From that time defendant's property is in custody of the law. Johnson *v.* Ball, 1 Yerger, 292.

In this case there is no allegation of fraud. The debtor transferred his property to a trustee honestly and fairly, accord-

ing to the face of this record. By the law of Tennessee, the deed of trust took effect the moment it was delivered to the register to be recorded. It was his duty by express law to indorse on the deed the exact time of delivery. After that, all liens were cut off. This was done before the judgment was rendered. It matters not whether defendant parted with his property on the day the judgment was rendered, or on a subsequent day, as he was divested of it the moment the trustee delivered the deed to be recorded. If it was otherwise, and the execution related to a judgment by default (which might remain unconfirmed for months), all executions or final judgments, where a default had been entered, would bind from the first day of the term, and overreach sales made by retail dealers to an alarming extent; a doctrine unknown and altogether inadmissible in the State of Tennessee, or elsewhere, so far as I know.

The Supreme Court of Tennessee (to revise whose decision this writ of error is prosecuted) laid down the law correctly, as I think, in its opinion in this cause, and I am of opinion that the judgment ought to be affirmed. And I am instructed to say for my brother Nelson, who heard the cause, but is now absent, that this is his opinion also.

### Order.

This cause came on to be heard on the transcript of the record from the Supreme Court of the State of Tennessee, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Supreme Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Supreme Court, for further proceedings to be had therein, in conformity to the opinion of this court.