MARÍA JOSEFA GONZÁLEZ, ETC., ET AL., Plaintiffs and Appellants, *v.* HEIRS OF DÍAZ ROMÁN and his wife MANUELA MASS COLÓN, ETC., Defendants and Appellees; JACOBO REBOYRÁS ROMÁN, Intervener.

No. 9566. Argued February 12, 1949.—Decided March 11, 1949.

---

*Eduardo Pérez Casalduc* for appellants. *A. Reyes Delgado, Diego E. Ramos,* and *P. Santos Borges* for appellees.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

In the amended complaint filed in the District Court of Arecibo it is alleged, as the first cause of action, that the plaintiffs are owners in common of several undivided interests which represent as a whole 5/8 of two rural properties; that both farms were formerly owned in common and undividedly by Isidra, Felipa, Ramona, Magdalena, Modesta, María Gil, Josefa and Carlino González, who were brothers and sisters; that in 1920 co-owners Magdalena, Modesta, and Carlino González, sold their respective shares to Ramón Díaz Román, defendants' predecessor, whereupon he became owner of 3/8 while the others remained owners of 5/8 of both properties; that Isidra, Felipa and Ramona, owner each of 1/8 interest in both farms, died intestate, their shares being respectively inherited by their heirs, plaintiffs herein.

The complaint further alleges that after Ramón Díaz Román, defendants' predecessor, had acquired the shares sold to him by the three members of the González family, he went to the other co-owners who lived in one of the farms, and told them that he would take charge of the taxes and later would collect from each co-owner the proportionate part by deducting it from the value of the fruits yielded by the

farm upon liquidation thereof; that said Díaz Román, maliciously and with the purpose of becoming owner of both properties, despite the fact that he had sufficient money to pay the taxes, left them unpaid and caused the properties, assessed at $7,000, to be sold for delinquent taxes amounting to $102.18; that the farms were adjudicated in December 5, 1922 to Alberto Sureda for $415, who sold them to Ramón Reboyrás Román, a brother of Ramón Díaz Román on their mother's side, by deed of February 14, 1924; and that on March 31, 1928 Reboyrás sold both properties to his brother Ramón Díaz Román, defendants' predecessor. Plaintiffs allege that they had no knowledge of the sale of their property until Díaz Román informed them that he had acquired it from the purchaser at the public auction; that Díaz Román told them that he had been unable to pay the taxes because the yield of the property had been insufficient and that in order to save his part he had decided to acquire the property for himself; that Sureda purchased the property with money given him by Díaz Román, acting as the latters' agent and for his benefit; that Sureda obeying orders from Díaz conveyed both properties to the latter's brother, without any price or consideration having been paid; that Díaz Román acquired both properties from Reboyrás without paying any money or consideration therefor; that the purchase by Sureda as well as the subsequent conveyances were fraudulent and carried out by defendants' predecessor with the purpose of depriving the plaintiffs of their property; that this was proved by the fact that although both farms were sold in their entirety, Sureda only recorded the acquisition of plaintiffs' shares, without entering any record as to the condominia of Díaz Román. The plaintiffs finally allege that the public sale of their property is void because they were not notified of the attachment, or of the public sale by the Collector of Internal Revenue of Utuado.

In their second cause of action they claim the amount of $60,000 as the value of the fruits yielded by the farms or

that should have been yielded, from 1924 until the filing of the complaint.

The defendants answered and specifically denied the essential averments of the complaint. They alleged as "demurrers"; (*a*) that the complaint does not state facts sufficient to constitute a cause of action; and (*b*) that the first cause of action has prescribed under § 1253 of the Civil Code (1930 ed.) and the second under § 1855 of the same Code.

As special defenses the defendants set up:

(*a*) That the defendants, and their predecessors in title have been in possession of the property, with just title and in good faith, as owners thereof, publicly, peacefully and uninterruptedly, for more than ten years, in Puerto Rico, where the interested parties have lived during all that time.

(*b*) That the action seeking the annullment of the attachment and of the public sale has prescribed because more than 15 years have elapsed since the time that the action could have been instituted.

(*c*) That the plaintiffs Josefa and Modesta González ratified all the proceedings by appearing in the Treasury Department to procure their share of the proceeds of the public sale, for which they were given a check; and that Baldomero and Saturnina Vera González, heirs of Isidra González, did likewise.

(*d*) That all the other plaintiffs are estopped from making any claim against the defendants because, through their conduct and acts, they have all acknowledged the validity of the proceedings by virtue of which the defendants have become the owners of both properties.

(*e*) That defendants' predecessor was a third person, because he acquired from the owner appearing in the registry of property, without being aware of any defect or flaw in the title of the person from whom he acquired.

With the court's leave, Jacobo Reboyrás Román intervened and was substituted as defendant party. He filed an answer couched in identical terms as defendants'.

The plaintiffs appealed from the judgment dismissing the complaint as to both causes of action, with costs on the plaintiffs. They base their appeal on five assignments of error, one of which is to the effect that "The lower court erred in refusing to decree the annulment of the tax sale of the shares belonging to (María) Josefa, (María) Gil, (María) Isidra, (María) Felipa and (María) Ramona González Colón, after it having been proved that notice of the attachment was not served as prescribed by § 342 of the Political Code read together with § 336. . ."

The uncontradicted evidence showed that the property sued on belonged to Tomás Aquino González and that it was recorded in the registry of property in his name; that he died in 1919 under a will executed in 1918; that in the partition of his property he adjudicated said undivided property to his eight acknowledged natural children, previously mentioned, in joint ownership; that the property was recorded in the registry of property in the name of the estate of Tomás Aquino González and that it was likewise assessed, in the name of the estate, for tax purposes and that the taxes corresponding to the year 1921–22 were not paid, for which reason the Collector of Internal Revenue proceeded to attach, and did attach, said property, as belonging to the heirs of Tomás Aquino González, having served the notice of said attachment on Baleriana González only, as a member of the family, without having notified any of the other co-owners; that the Collector proceeded to sell the property at public auction, the only bidders being Ramón Díaz Román and Alberto Sureda, and that the property was adjudicated to the latter who was the best bidder and in whose favor the Collector issued the Certificate of Sale which was recorded in the registry of property as to the condominia belonging to the five González co-owners, inasmuch as the other three owners, prior to the attachment and sale, had sold their shares to Ramón Díaz Román who had already recorded them in his favor; that the certificate of sale was notified

604

by the Collector to seven of the co-owners of the property surnamed González Colón, including Magdalena and Modesta who had already sold to Ramón Díaz Román and even to María Sixta, another daughter of Tomás Aquino González who had died before her father (sic); that in 1924, when the year granted to the owners for the redemption of their property had expired, Sureda sold the five shares to Ramón Reboyrás (brother of Ramón Díaz Román) who recorded them in his favor and in 1928 sold them to Ramón Díaz Román himself, whereupon he became owner of the whole property, this sale being also recorded in the registry. It was further proved that the share belonging to the plaintiff María Gil González had been sold by her to Antonio García Medero by deed of September 18, 1920 before Notary Francisco Acevedo, although this sale was never recorded in the registry of property.

 Sections 342 and 336 of the Political Code, as they read in 1922, insofar as material, provide:

"Section 342.—Upon the return of said order and certificate, the collector, or agent shall serve notice upon the owner of said property, in the manner prescribed in Section 336. . ."

"Section 336.—Immediately upon the receipt of the written consent of the Treasurer, the collector, or agent, shall make out a written notice of attachment of the personal property of the delinquent tax-payer, which notice shall contain the amount of delinquent taxes and the interest provided for by Section 330. The said attachment shall be enforcible as soon as notice thereof shall have been served by leaving a copy thereof with the debtor himself or any member of his family or attendants of legal age, and record of such service shall be noted down by the collector, or agent, for subsequent action. When the collector, or agent, fails to find any member of said debtor's family or attendants, he shall call in two neighbors as witnesses of the service of the notice of attachment, and he shall leave said notice in the hands of said witnesses. . ."

Section 347 of the Political Code provides that the Collector shall prepare, sign and deliver to the purchaser a certificate of purchase and that:

". . . Said certificate shall be *prima facie* evidence of the facts recited therein in any controversy, proceeding or suit involving or concerning the rights of the purchaser, his heirs or assigns, to the property thereby conveyed; and the purchaser, his heirs or assigns, may, upon receipt of such certificate, have the same duly recorded by the registrar of property of the district in which such property is situated upon the payment of a fee of two dollars."

Section 373 of the Code of Civil Procedure provides that *prima facie* evidence is that which suffices for the proof of a particular fact, until contradicted or overcome by the other evidence.

The notice of attachment in this case was addressed to the estate of Tomás Aquino González and was served solely and exclusively on Baleriana González, as a member of the family, on September 28, 1922. It was proved that Baleriana González and María Isidra González are one and the same person, that is, the owner of one share of the property sued on. Did the service of the notice of attachment comply with the requirements of § 336, *supra?* Not in our opinion. In order for a notice of this nature to have any legal effect it must be served on all the owners of the property, whenever possible. Service on one co-owner alone is insufficient pursuant to the statute and the ruling laid down by this Court in *González et al.* v. *Pirazzi et al.*, 23 P.R.R. 370. In the *González* case it was held that when there are several owners of a property, each one is entitled to a notice of some kind and we said on page 376:

"That section continually refers to the 'debtor'. Section 392 of the Political Code says that the singular number includes the plural. At the time of the attachment and sale the true record owners of the property were not only Natalio González but the appellants as well, and they were all entitled to notice by the provisions of the Political Code as of the general law. See *Menéndez* v. *The Registrar of Property*, 13 P.R.R. 173; 37 Cyc. 1325, note 15; Cooley on Taxation (3rd ed.), page 733; *Weinreich* v. *Hensley*, 121 Cal. 647, 659; *Turpin* v. *Lemon*, 187 U. S. 57. In this case the owners were not notified, but only

one of them. It makes no difference that Section 336, *supra,* says that notice may be made upon members of the family. The family to which that Section refers presupposes the family living on the place. A cousin is not a member of the family of the cousins, co-owners who are living away. We think that this reasoning flows from Section 336 itself and from other sections of the Political Code. The correct theory is that notice must be given to the owners, to their families if the latter are on the place, or be put into the hands of witnesses when all the owners are not to be found. The court has nothing to do with the inconveniences that our construction of the statute would entail when there are several owners. The fact remains that each owner is entitled to notice of some kind and in this case the appellants were not notified at all. The fact further appears that at the time one of the assessments was made and at the time of the sale, the property was on record in the registry of property in the name of the appellants; hence, it is evident that the collector did not make due inquiry.

"We therefore reach the conclusion that in selling the property the ownership-in-common of which is claimed by complainants from the defendants, the Government did not follow the proper procedure, and consequently that the said sale is null and void so far as it relates to said ownership-in-common, as well as the successive transfers to Nereo Pirazzi and Zoila Lugo in that part relating to such tenancy in common."

This doctrine was ratified in *Nieves* v. *Registrar*, 67 P.R.R. 1, where we also held that:

"The notice of the sale which the collector served on the heirs, owners of the property, can in no way change the situation created by the lack of service of the notice of attachment. Section 315 of the Political Code provides that in all cases where real estate is attached and sold for the payment of taxes, the Treasurer 'shall notify all persons having a mortgage or other lien on said property of record of such sale and in such notice shall state the date of the sale, the amount for which the property was sold, and such other facts as he may deem advisable.' The purpose of such notice to the mortgage creditors or owners of other liens is to inform them of what has occurred in order that they may exercise the right of redemption granted to them by § 348 of that same Code. Sec-

tion 315 does not impose on the Treasurer any duty to notify the sale to the owner of the property sold at public auction; and obviously it should be so, since it must be presumed that a taxpayer whose property is to be sold at public auction has been sufficiently informed, if and when the collector complies with the requirements of §§ 342 and 343 of the Political Code. The lack of service of notice of the attachment was not supplied or cured by the notification of the sale. The attachment of property for the collection of taxes is not effective unless notice thereof is served in the manner provided by §§ 336 and 342 of the Political Code."·

The collector who issued and served the notice in the instant case had or should have had knowledge of the fact that there were several co-owners, for he addressed the notice to the Estate of Tomás Aquino González. This being so, he should have served it on all the heirs who had not sold their share. He did not even notify Ramón Díaz Román, defendants' predecessor, who at that time was owner of three shares of the property, which had been sold to him by three of the heirs of Aquino González in 1920. That Ramón Díaz Román knew of the sale although he had not been notified of the attachment, is clear from the fact that he was one of the persons present at the sale and made a bid of $400 for the property. Of course, insofar as his condominia are concerned, he could not have successfully alleged that he was not notified of the attachment and then attack the proceedings as void. The plaintiffs are not in the same position. They, or their predecessors, with the exception of María Isidra (Baleriana), were never notified of the attachment of the property. The notice of an accomplished sale did not cure the lack of jurisdiction of the collector to sell the property at public auction. We can compare the sale made by the Collector of Internal Revenue with a judicial sale ordered by a court and in this last instance we have held, in *Oliver et al.* v. *Oliver*, 23 P.R.R. 168, 176 that:

". . . Treating the judicial sale as a contract in which the court or its duly authorized official representative is substituted

for the real vendor whose 'consent' is by a paradoxical legal fiction given by the court, yet the court must have jurisdiction at least over the subject-matter and usually over the person of the defendant. Courts are creatures of the law and the power to hear and determine the subject-matter in controversy is the ordinary definition and, indeed, the very essence of jurisdiction. And if the law requires personal or constructive service of a summons upon a defendant as an indispensable prerequisite to the exercise of such jurisdiction, then the court, without such previous service, is as wholly without power to give such consent as any unauthorized private individual."

In the judicial sale it is the court that gives the consent. In the tax sale it is the collector, as agent of the Treasurer of Puerto Rico. If the court acts without jurisdiction in the absence of a previous service, the collector is as wholly unauthorized to sell without the notice of attachment, which is the notice for the public auction where the day for the sale is fixed.

". . . A notice of sale, as required by a statute, is necessary to authorize a tax sale and the absence of the notice renders the sale void. This is one of the most important of all the safeguards that have been deemed necessary to protect the interests of persons taxed, and nothing can be substituted for it or excuse the failure to give it." 3 Cooley Taxation, 2791, § 1409 (4th ed.) and cases cited in footnotes.

And the same textwriter says on p. 2793, § 1410:

"If the statute requires personal notice, no other form of notice can be substituted, and the notice must fully comply with the requirements of the statute as to the person to be served, etc. If two or more own land in common, and the statute requires notice to owners, all must be given notice and a sale under a notice given to only one of them is invalid." See Annotation in 54 A.L.R. 756, 757–8.

The lower court, therefore, erred in not deciding that the public sale was void as to those condominia of the plaintiffs who were not notified of the attachment of the property. That is, María Isidra (Baleriana) was notified and as to

her and her successors the sale was valid; María Modesta, María Magdalena, Carlino and María Gil had sold their share since 1920 and, therefore, did not need to be notified and as to them and their successors the sale was also valid. Hence, the only shares that remain subject to said nullity are those sold at public auction belonging to the plaintiff María Josefa and the successors of María Ramona and María Felipa.

■ The defendants argue, however, that the action for annulment in this case is barred because more than 15 years have elapsed since the time that the action could have been instituted. We do not agree.

In *Oliver et al* v. *Oliver, supra,* it was accepted that "a judicial sale is a contract." It may also be accepted that a tax sale is such a contract. Since the sale is void because the consent of one of the parties who was never notified of the sale was wanting, there was no such contract. As we said in said case:

"... There is nothing to be 'annulled,' within the meaning of Section 1267, nothing upon which to base 'the action for nullity' referred to in Section 1268. It follows that the bar in question is no defense to an action for the revindication of real estate so sold." [1]

The absolute nullity and nonexistence of the sale having been established as to the co-owners who were not notified of the attachment, the action did not prescribe after fifteen years either. As we said in *Heirs of Trías* v. *Porto Rico Leaf Tobacco Co.,* 50 P.R.R. 88, 92:

"An action to establish the absolute nullity of a summary foreclosure proceeding is not barred by the lapse of fifteen years for the same reasons which sustain the conclusions that such an action is not barred by the lapse of four years. (Authorities.)"

---

[1] Sections 1267 and 1268 cited therein are §§ 1252 and 1253 of the Civil Code (1930 ed.) which provide insofar as material that the contracts containing the requirements of § 1213 may be annulled and that the action for annulment shall only last four years.

Since this is a case of nullity, prescription does not lie. *González et al.* v. *Fumero et al.*, 38 P.R.R. 497; *Boscio* v. *Vilá*, 67 P.R.R. 567. The same doctrine governs in the United States. 4 Cooley, Taxation, 2970, § 1510 *et seq.*; *Horsky* v. *McKennan*, 162 P. 376; *Redfield* v. *Parks*, 132 U. S. 239; *Moore* v. *Brown et al.*, 52 U. S. 413.

The defendants further maintain that in any event plaintiffs Josefa and Modesta González ratified all previous proceedings by procuring from the Treasury Department part of the proceeds of the public sale which they received in a check and that plaintiffs Baldomero and Saturnina Vera González, heirs of Isidra González, had done likewise.

The evidence as to this point was to the effect that on December 13, 1935, María Modesta and María Josefa González and Baldomero and Saturnina Vera González (the last two are heirs of María Isidra González) signed a document which reads thus:

"We, the undersigned, hereby state that we are the heirs of Tomás Aquino González, that by virtue of an execution sale of a property belonging to the Estate there was a surplus of ONE HUNDRED AND NINETY FIVE DOLLARS AND FIFTY THREE CENTS, which belongs to us and is now deposited in the Treasury Department of Puerto Rico.

"That we have not given this case to any other attorney for litigation but do wish and hereby deliver it to Attorney Luis Pérez Matos of Utuado in order that he may take the necessary steps to collect or obtain the money."

On January 28, 1936, Attorney L. Pérez Matos signed a receipt which reads thus:

"I have received from the Head of the Attachment Division of San Juan, P. R., in my capacity as representative of the Heirs of Tomás Aquino González, the amount of one hundred and ninety five dollars and 51/100 ($195.51) which is the balance in favor of said heirs from the sale of the following property after having deducted the taxes on the property for the fiscal year 1921–22, surcharges and costs amounting to $102.18.

"Property of 151.37 acres (cuerdas) containing 3 frame and straw houses in the wards of Los Ángeles and Caguana of the Municipality of Utuado which was sold at public auction in the office of the Collector on December 5, 1922."

Attorney Pérez Matos testified at the trial of this case and said that he had been commissioned by Baldomero Vera González to take steps to collect said surplus; that he collected the money and after his fees were paid the rest was distributed; that they all went to his office because they had to endorse the check in order to cash it. Baldomero Vera González testified that he signed the document which Attorney Pérez Matos gave him and then took it to his aunts María Josefa and María Modesta and his sister Saturnina for their signature; that they signed it and later he received some money from the attorney which was distributed among all; that he did not know the source of the money. The plaintiffs mentioned above testified to the same effect that they signed the document and received the money but did not know the source of the money but believed that it came from the inheritance of Tomás Aquino González.

We have no doubt that Attorney Pérez Matos acted in representation of the plaintiffs who signed the document authorizing him to take steps to collect the surplus proceeds of the sale, that he collected it and the same was distributed among them. What was the legal effect of this act?

The general rule is explained by Cooley thus:

"A person may be estopped to attack the validity of a tax sale or conveyance, as by accepting *with knowledge of all the facts* the excess received on the sale over and above the taxes and charges." 4 Op. Cit. 2961, § 1507. (Italics ours.)

The plaintiffs can not maintain that they had no knowledge of all the facts which they now assert to question the validity of the sale. They knew that they had not been notified of the attachment of the property, which is the essential fact in the case, although it was years after Ramón Díaz Román's death that they learned for the first time of

what, according to them, constituted his fraudulent acts. Furthermore, in the document signed by them, they expressly admit knowing that a sale took place and that there was a surplus of $195.51 which belonged to them as heirs of Tomás Aquino González. And they also admitted having received said surplus, although they insisted that they did not know its source. The lower court did not believe the testimony of the plaintiffs as to the latter point, but did believe the testimony of the attorney who intervened, and to that effect stated in its opinion:

". . . Attorney Pérez Matos who is an attorney of good standing, testified that when he received the money, all the plaintiffs or their predecessors went to his office where it was distributed, and that he explained to them about the excess received on the sale."

We are not convinced that the lower court committed manifest error in weighing the evidence as to this point and therefore, we must accept the conclusion of the court that when the plaintiffs signed the document and accepted the surplus of the proceeds of the sale, they did so with knowledge of the facts and can not allege successfully that they are not estopped to question the validity of the sale. Cf. *Suc. of Igaravídez et al.* v. *Rubert Bros. et al.*, 23 P.R.R. 272.

In *Proctor* v. *Nance*, 119 S. W. 409 (Mo. 1909), it was held that although the proceedings for the sale of land for taxes were insufficient to convey the title, where the owner ratifies the sale by accepting the surplus proceeds over the amount of taxes and costs, he and his successors are estopped to question the validity of the sale, though the owner did not know at the time of accepting the surplus that the sale was void. In that case, as here, it was alleged that the owner was an uneducated person and that it was not his intention to ratify the sale by accepting the surplus and he even tried to deposit it in court. To that same effect see *Milan Bank* v. *Richmond*, 217 S. W. 74 (Mo., 1919); *Walker* v. *Hassler*,

240 S. W. 257 (Mo., 1922) *Héctor* v. *Mann*, 124 S. W. 1109 (Mo., 1910).

We are not deciding here that the acts of those plaintiffs who accepted the surplus amount to a ratification of the sale, for according to § 1262 of the Civil Code only the contracts containing the requisites mentioned in § 1213 may be ratified and we have already held that the sale was void for want of consent. We are merely holding that said plaintiffs, as a result of their conduct, are estopped from questioning the validity of the sale.

 Now, although Attorney Pérez Matos demanded the surplus in the name of the Estate of Tomás Aquino González and signed the receipt in the name of said estate, it was proved that María Josefa and María Modesta González and Baldomero and Saturnina Vera González were the only members of the estate who were benefited by said surplus without it having been shown that they were authorized to ·act as they did in the name of the other members of the estate.

It follows, therefore, that as to the shares originally belonging to María Magdalena, María Modesta, María Gil and Carlino, since they were sold in 1920, prior to the attachment and the sale, the plaintiffs can not assert any right; nor as to the share originally belonging to María Isidra (Baleriana) because she was validly served with notice of the attachment, or as to María Josefa's because she accepted a part of the surplus of the sale. There then remain the two shares which originally belonged to María Felipa and María Ramona, which, on their death, passed to their heirs, as to the first, plaintiffs Angel, América, Camelia and Josefa Ramos González, and as to the second, who left no descendants or ascendants, the share became the property of her sisters María Gil, María Josefa, María Modesta, María Magdalena and her brother Carlino and of the children of María Isidra and María Felipa. But then Carlino also died without leaving any descendants or ascendants, for which reason his

share in the condominium which he acquired from his sister María Ramona passed again to his sisters María Gil, María Josefa and María Modesta and to the children of María Isidra, María Felipa and María Magdalena, who are mentioned in the complaint as well as to the children of Tomás Vera (son of María Isidra) who also died. But of the children of María Isidra, Baldomero and Saturnina accepted part of the surplus of the sale and so did María Modesta. So that these three are not entitled either to any claim now.

 The defendants maintain that they and their predecessors have been in possession of the property sued on with proper title and in good faith, as owners, publicly, peacefully and uninterruptedly, in the presence of the plaintiffs for more than ten years. That is, they plead as a defense the acquisitive prescription provided by § 1857 of the Civil Code. Accepting that the title acquired by defendants' predecessor could be deemed a proper title,[2] he was not a possessor in good faith for a possessor in good faith is one ". . . who is not aware that there exists in his title or in the manner of acquiring it, any flaw invalidating the same," § 363 of the Civil Code (1930 ed.), or pursuant to § 1850 the good faith of the possessor consists "in his belief that the person from whom he received the thing was the owner of the same, and could convey his title," and Díaz Román was aware that of the property sold at public auction he possessed three shares which he had purchased from María Modesta, María Magdalena and Carlino and that he had not been notified of the attachment, yet he permitted the whole property to be adjudicated to Sureda in his presence, for he was one of the bidders. Since he was a co-owner who had not

---

[2] Sections 1852, 1853 and 1854 of the Civil Code (1930 ed.) provide:

"Section 1852.—By a proper title is understood that which legally suffices to transfer the ownership or property right, the prescription of which is in question.

"Section 1853.—The title for prescription must be true and valid.

"Section 1854.—A proper title must be proven; it never can be presumed."

been notified, it should be presumed that he learned of the public sale by the edicts published in which only the notice of attachment served on Baleriana González could appear. He was aware, therefore, of the defect in the manner of acquiring as well as in the title of Sureda and of Reboyrás.

Notwithstanding the fact that the lower court held that the evidence introduced was not sufficient to establish that the transactions of purchase and sale which took place between Sureda, Reyborás and Díaz Román were fraudulent, we have no doubt that Díaz Román knew and was aware that ⅝ of the property belonged to the plaintiffs or their predecessors and that in the certificate of sale issued by the collector in favor of Sureda and recorded in the Registry of Property it was merely stated:

"That pursuant to Section 315 of the Political Code of Puerto Rico I have served notice *of this sale* on each and every one of the members of the estate of Tomás Aquino González. . ." (Italics ours.)

The certificate is silent as to whether the members of the estate had been notified of the attachment, as required by the statute, since § 315 provides that the sale of the property shall be notified to all persons having a mortgage or lien on said property, and we have held in *Nieves* v. *Registrar, supra,* that the notice of the sale to the owners of the property does not cure the failure to serve a notice of attachment. And this is so because § 315 itself provides that:

". . . Every notice of attachment for delinquent taxes, whether real or personal, shall have the effect of a judgment against all of the property of the delinquent attached. . ."

Furthermore, the notice of attachment entered in the registry at the request of the Collector of Internal Revenue shows that the property was attached as belonging to the Estate of Tomás Aquino González, when at that time the Registrar had informed the Collector that the property

appeared recorded in the name of Tomás Aquino González. Díaz Román, who by 1920 had already acquired three shares in the property, two of which he purchased from María Modesta and María Magdalena for $2,000 and the third by an exchange for Carlino's share valued at $1,175, that is, for the total value of $3,175, did not record them in the registry in his name until January 1923, that is one year after the public sale had taken place, at which sale he was present, but a month before Sureda recorded the certificate of sale issued to him by the Collector. Díaz Román, therefore, permitted that property assessed for tax purposes at $7,000 and of which he had acquired three shares for $3,175, be sold because of unpaid taxes amounting to $102 for the price of $415 offered by Sureda, who outbid by $15 the $400 offer made by Díaz Román himself. A year later, Sureda sells his shares in the property to a half-brother of Díaz Román for $580 and four years later Díaz Román appears as purchasing those shares from his brother for $2,000. Under all these circumstances, even if we do not disturb the conclusion of the lower court as to the question of fraud, we can not agree with its finding that Díaz Román was a bona fide possessor. And again, under the stated circumstances, Díaz Román can not be considered as a third person protected by § 34 of the Mortgage Law.

The lower court erred in dismissing the first cause of action of the complaint. As to the second concerning the fruits, the evidence of the plaintiffs was too vague and indefinite to base a fair judgment thereon.

The judgment should be reversed and another rendered instead granting the first cause of action and, consequently, declaring void the public sale of the property described in the complaint as to the $2/8$ interest which originally belonged to María Felipa and María Ramona González, and void also the sales of those shares made by Alberto Sureda to Ramón Reboyrás and by the latter to Ramón Díaz Román, and that the defendants should execute a deed acknowledging

the proper shares belonging to those plaintiffs who, in harmony with the terms of this opinion, are entitled thereto, and the second cause of action is dismissed, with costs but without including attorney's fees.

Mr. Justice Negrón Fernández did not participate herein.