67 U.S. 430 (____)
2 Black 430
WARD ET AL.
v.
CHAMBERLAIN ET AL.
Supreme Court of United States.

*432 Mr. Newberry, of Ohio, for Complainants.
Mr. Spalding, of Ohio, for Defendants.
Mr. Justice CLIFFORD.
This is a bill in equity, and the case comes before the Court on a certificate of division in opinion between the Judges of the Circuit Court of the United States for the Northern District of Ohio. According to the transcript the bill of complaint sets forth that the complainants, on the 12th day of November, 1856, upon appeal from the District Court of the United States, obtained a decree in the Circuit Court for the Southern District of Ohio for the sum of $36,000 against the two respondents first named, in a proceeding by libel, filed in the District Court on the 27th day of October, 1852, for damages sustained, as alleged in the libel, by means of a collision on the waters of Lake Erie, between the steamer Atlantic, belonging to the libellants, and the propeller Ogdensburg, belonging to the aforesaid respondents, whereby the steamer was sunk and lost. Complainants also allege that the case was taken by appeal to this Court, and that the decree of the Circuit Court was here affirmed; that on the 7th day of July, 1859, when the mandate of this Court was received and filed in the Circuit Court, a joint decree, by the agreement of the parties, was entered there against the original respondents and their sureties on the appeal to this Court; that the parties to the last named decree stipulated and agreed between themselves that the *433 original respondents should make certain payments at stated times on account of the decree, and that if such payments were regularly and punctually made, no execution should issue on the decree, but that they also stipulated and agreed that in default of any such payment as required by the agreement, the complainants might thereupon proceed to collect the amount due and unpaid as they should see fit.
They also allege that two payments of $1,000 each were duly made under the stipulation and agreement, but that the aforesaid respondents subsequently made default, and when a second default had occurred, the complainants caused execution to issue upon the last named decree against the goods and chattels, lands and tenements of the respondents in that decree, and delivered the same to the Marshal, and that the Marshal, finding no goods or chattels of the execution debtors, and for want of such, levied the execution upon certain parcels of land belonging to them, situated in the Northern District of Ohio, and which are particularly described in the bill of complaint. Rights and interests in, and liens upon the lands are claimed by the other respondents, as the complainants allege, in regard to which they, the complainants, are not particularly advised; and they also allege that the respondents owned the lands levied upon and described in the bill of complaint at and before the time of the rendition of the first named decree, and have so owned the same ever since that time, and that they have no other lands or tenements in the State, and have no goods or chattels liable to execution.
Prayer of the bill of complaint is for discovery, and that the rights of the parties and the dates and validity of their several liens in respect of the lands may be ascertained, and that the lands may be sold and the proceeds applied so far as can of right be done, to the payment of the amount due upon the decrees and for general relief. To the bill of complaint the respondents in the decrees demurred and the complainants joined in demurrer, thereupon the following questions of law occurred before the Court, in regard to which the opinions of the Judges of the Court were opposed.
*434 1. Whether either of the decrees was a lien upon the real estate of the respondents therein who owned such real estate as aforesaid.
2. Whether an execution can be issued upon a decree in admiralty in Ohio against the lands of the respondents, they having no goods and chattels liable to execution to satisfy the same.
3. Whether the issuing and levying of the execution in this case, as aforesaid, were not nullities, and whether the levy of the execution in anywise bound the lands upon which the same was levied.
4. Whether real estate can be reached by proceedings in chancery to satisfy a decree in admiralty in Ohio, where the respondent has no goods or chattels liable to execution.
I. Provision is made by the Act of the 29th of April, 1802, that whenever any question shall occur before a Circuit Court, upon which the opinions of the Judges shall be opposed, the point upon which the disagreement may happen, shall, during the same term, upon the request of either party or their counsel, be stated under the direction of the Judges, and certified under the seal of the Court, to the Supreme Court at their next session to be held thereafter, and shall by the said Court be finally decided. 2 Stat. at Large, 156. Such certificate, as has repeatedly been held by this Court, brings nothing before this Court for its consideration but the points or questions certified, as required by the 6th section of the act. Defective certificates are sometimes sent up, but in such case the Court uniformly refuses to certify any opinion, and remands the cause for further proceedings, holding, under all circumstances, that nothing can come before this Court, under that provision, except such single definite questions as shall actually arise and become the subject of disagreement in the Court below, and be duly certified here for decision. Ogle vs. Lee, (2 Cran., 33); Perkins vs. Hart's Exr., (11 Whea., 237); Kennedy et al. vs. Georgia State Bank, (8 How., p. 611.) All suggestions, therefore, respecting any supposed informality in the decree, or irregularities in the proceedings of the suit, are obviously premature and out of place, and may well *435 be dismissed without further remark; because no such inquiries are involved in the points certified, and by all the decisions of this Court matters not so certified are not before the Court for its consideration, but remain in the Court below to be determined by the Circuit Judges. Wayman vs. Southard, (10 Whea., 21); Saunders vs. Gould, (4 Pet., 392.) Such other matters, undoubtedly, may be brought here for revision by another certificate of division in an opinion like the present, or by an appeal after final judgment, but nothing of the kind is here now for the consideration of the Court.
II. Recurring to the questions certified in the transcript, it is obvious that the first three involve the same general considerations, and present the important inquiries  1. Whether a decree in admiralty for the payment of money, rendered in a Federal Court, in a suit in personam under the circumstances stated, is a lien upon the lands of the respondents in the decree, and, if so, then  2. Whether an execution issued on the same may, for the want of goods and chattels of the execution debtor, be lawfully levied on his real estate. Libellants, under the 21st rule in admiralty, adopted at the last session of this Court, may have a writ of execution in the nature of a fieri facias in all cases of a final decree for the payment of money, commanding the marshal or his deputy to levy and collect the amount thereof out of the goods and chattels, lands and tenements, or other real estate of the defendant or stipulator. Execution, however, was issued upon the decree described in the bill of complaint in 1860, before the present rule was adopted, and while the old rule adopted in 1845 was in operation. By that rule it was provided that the libellant might, at his election, have an attachment to compel the defendant to perform the decree or a writ of execution in the nature of a capias, and of a fieri facias, commanding the Marshal or his deputy to levy the amount thereof of the goods and chattels of the defendant, and for want thereof to arrest his body to answer the exigency of the execution. Authority was given to the Courts of the United States, by the 17th section of the Judiciary Act, to make and establish all necessary rules for the orderly conducting of business in the said Courts, provided *436 such rules were not repugnant to the laws of the United States; and by the 7th section of the Act of the 2d of March, 1793, additional authority was conferred upon the several Courts of the United States to make rules and orders for their respective Courts directing certain prescribed proceedings, and other matters in the vacation, and otherwise in a manner not repugnant to the laws of the United States, and to regulate the practice of said Courts respectively for the advancement of justice, and to prevent delays in the proceedings. 1 Stat. at Large, pp. 83, 335.
Full power and authority were also given to this Court by the 6th section of the Act of the 23d of August, 1842, to prescribe, regulate, and alter the forms of writs and other process to be used and issued in the District and Circuit Courts, and the forms and modes of framing and filing libels, bills, answers, and other pleadings and proceedings in suits at common law, or in admiralty and in equity, pending in those Courts, and also the forms and modes of taking and obtaining evidence, and of obtaining discovery, and of proceeding to obtain relief, and of proceeding before trustees appointed by the Court, and generally to regulate the whole practice of the said Courts so as to prevent delays and promote the other objects specified in the section. 5 Stat. at Large, 518. None of those provisions, however, authorize this Court to adopt rules making judgments or decrees for the payment of money a lien on land where no such charge is created by law, or to displace any such right where the same is conferred or recognized by an Act of Congress. Remarks are to be found in the opinion of the Court in Beers et al. vs. Haughton, (9 Pet., 360), which give some countenance to that theory, but the remarks were not necessary to the adjudication of the matter in controversy, and evidently should be understood as referring to the examples previously mentioned in the opinion of the Court, where process had been modified to make it conform to State laws adopted by rule of Court. Congress, say the Court, may adopt such State laws directly or by substantive enactment, or they may confide the authority to adopt them to the Courts of the United States: and the Judge who delivered *437 the opinion, in enforcing the preposition, went on to say that the Courts may by their rules not only alter the forms, but the effect and operation of process, both mesne and final, so that it may reach property not before liable, or may exempt property previously subject to such process.
Explained as above, the remarks are perhaps without objection, but it cannot for a moment be admitted that any rule adopted by this Court, merely as such, can enlarge, diminish, or vary the operation and effect of mesne or final process upon the property of the debtor in respect to the matter under consideration. Although a lien on land constitutes no property or right in the land itself, still it confers a right to levy on the same to the exclusion of other adverse interests acquired subsequently to the judgment, and when the levy is actually made on the land affected by the lien, the title of the creditor generally relates back to the time of the judgment, so as to cut out intermediate incumbrances. Conrad vs. The Atlantic Ins. Co., (1 Pet., 443): Massingill vs. Downs, (11 How., 767.) Different regulations however, prevail upon the subject in different jurisdictions, and in some of the States neither judgments nor decrees for the payment of money, except in cases of attachment on mense process, create any preference in favor of the creditor until the execution issuing on the same has been duly levied on the land. Reference is made to these various regulations as confirming the proposition that rules of Court can have no effect to create such a right, or to displace it where it has been conferred by the Legislature.
III. Two errors, as was supposed, existed in the old rule, and it was on that account that it was abolished and the new one was substituted in its place. Arrest of the body of the debtor was improperly allowed, and the remedy of the creditor against the property of the debtor was improperly restricted. 5 Stat. at Large, pp. 321, 410; 4 Stat. at Large, 281. Repeal of the old rule corrected one of the supposed errors and the new rule was adopted to correct the other, so that the practice of the Admiralty Courts upon both subjects might conform to the existing provisions of law. Such were the views of the Court at the time the alteration was made in the rule, but it is insisted by the *438 respondents that decrees in admiralty, although rendered in suits in personam and for the payment of money, are not in any case a lien on land under the laws of Congress. They do not deny that judgments and decrees in equity, for the payment of money, are a lien on land in the State of Ohio; nor that, by the laws of Congress, such judgments and decrees in the Federal Courts follow in that respect the laws of the State in which the same were rendered or pronounced.
Argument in support of the first proposition is certainly unnecessary, because it is the subject of express legislation. Code, sec. 421; Swan's Stat., 675. Laws to that effect were passed at a very early period in the history of the State, and they appear to have been continued to the present time. Repeated decisions of this Court also have established the doctrine, that the lien of judgments and decrees in the Federal Courts arises out of the adoption of the State laws upon that subject, and that the lien may be considered as a rule of property under the thirty-fourth section of the Judiciary Act. Clements vs. Berry, (11 How., 411); United States vs. Morrison, (4 Pet., 124); Ralston vs. Bell, (2 Dall, 158). To the same effect, also, is the decision of Mr. Justice Grier, in Lombard vs. Bayard, (1 Wall, Jr., 96), wherein he held: "1. That the lien of judgments in the Courts of the United States does not result from any direct legislation of Congress on that subject. 2. That under the Judiciary Act, which ordains that the laws of the several States shall be the rules of decision at common law, the Courts of the United States" have uniformly adopted the principles of State policy and jurisprudence on the subject of the lien of judgments, so far as the same were applicable, treating them as rules affecting real property, and its transmission, whether by descent or purchase. Regarding those propositions in the form first stated as settled and undeniable, nothing remains for consideration on this branch of the case except to inquire and ascertain whether or not decrees in admiralty for the payment of money stand upon the same footing as decrees in equity; for if they stand upon the same, then it is clear that the first three questions must be *439 answered in the affirmative, and if not, then they must be answered in the negative.
4. Expressions are to be found in one or more of the cases referred to which countenance the idea that the State laws in respect to the lien of judgments and decrees were adopted by the Courts of the United States, but upon a closer examination of the subject it will appear, we think, that those laws are recognized and substantially adopted by the Acts of Congress regulating process in the Courts of the United States. Authority was given to all the Courts of the United States by the 14th Section of the Judiciary Act to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law. Provision was also made by the 2d Section of the Act of the 29th of September, 1789, that the forms of writs and executions, except their style and modes of process, should be the same in each State, respectively, as were then used or allowed in the Supreme Court of the same; but it was provided that the forms and modes of proceedings in causes of equity and admiralty and maritime jurisdiction should be according to the course of the civil law. Power to issue process, mesne and final, was conferred upon all the Courts of the United States by the first provision, but the forms of process in suits at common law and the forms and modes of proceedings in equity and admiralty and maritime causes were prescribed by the second. Discrimination was made between suits at common law and suits in equity and admiralty, but the forms and modes of proceedings in the two latter were referred to the civil law. Expiring, as the last named Act did, at the end of the next session after which it was passed, further legislation became necessary, and Congress accordingly passed the Act of the 8th of May, 1792, confirming the forms of writs, executions, and other process then used in the Courts of the United States in suits at common law, but declaring, in effect, that the forms and modes of proceeding in suits of equity, and in those of admiralty and maritime jurisdiction, should be according to the principles, rules, and usages *440 which belong to Courts of Equity and to Courts of Admiralty, respectively, as contradistinguished from Courts of common law. Certain exceptions are specified in the same section, and the whole provision is made subject to such regulations as the Supreme Court of the United States shall think proper, from time to time, by rule, to prescribe to any Circuit or District Court concerning the same. (1 Stat. at Large, 276).
Two cases at least came before this Court involving the construction of that provision and its validity. Those cases among other things affirm: 1. That the States have no authority to control or regulate the proceedings in the Courts of the United States, except so far as the State Process Acts are adopted by Congress, or by the Courts of the United States under the authority of Congress. 2. That the foregoing provision adopted the forms of writs, executions, and other process of the States as existing in 1789, subject to such alterations as the Courts of the United States might make, but not subject to alterations since made in the State laws. 3. That the laws of the United States authorize the Courts of the Union so to alter the form of the process of execution then used in the State Courts as to subject to execution lands and other property not then subject to execution by the State laws in force at that time. Wayman vs. Southard (10 Whea., 41, 43); Bank of U.S. vs. Halstead, (10 Wheat., 63). In enforcing the third proposition, Mr. Justice Thompson in the last case said it is understood that it has been the general, if not the universal, practice of the Courts of the United States so to alter their executions as to authorize a levy upon whatever property is made subject to the like process from the State Courts, and under such alterations many sales of land have no doubt been made which might be disturbed if a contrary construction should be adopted. Both of those cases were decided in 1825, and at the same term this Court held, in the case of Manro vs. Almedia, (10 Whea., 490,) that the proceedings in cases of admiralty and maritime jurisdiction, under the beforementioned Process Act, were to be according to the modified admiralty practice of our own country, and that it was not a sufficient objection to the issuing of the process of attachment *441 that it had fallen into disuse in the parent country. Such was the state of the decisions of this Court when the Act of the 19th of May, 1828, was passed. 4 Stat. at Large, 278. Regulation of mesne process is the subject of the first section, commencing with the forms of mesne process in suits at common law in the Courts of the United States held in those States admitted into the Union since the date of the first process act. Forms of mesne process in those Courts are required to be the same in each of the said States respectively "as are now used in the highest Court of original and general jurisdiction of the same." Separate provision is also made in the same section in respect to the forms of mesne process in proceedings in equity and in those of admiralty and maritime jurisdiction. Repetition of those regulations is unnecessary, as they are substantially the same as those of the former act, except that the regulations relate solely to mesne process. Right of imparlance also is made, by the second section of the act, to depend in certain cases upon State laws. Where judgments are a lien upon the property of the defendant, and where, by the laws of the State, defendants are entitled in the Courts thereof to an imparlance of one term or more, the provision is that the defendants in actions in the Courts of the United States, holden in such State, shall be entitled to an imparlance of one term, showing that it was the intention of Congress to prevent a creditor suing in the Federal Courts from obtaining an advantage over another creditor suing in the State Courts. Bearing in mind that the first section of the act under consideration has respect solely to the forms of mesne process in the several Courts of the United States, and that the provision specifies and prescribes the source from which the forms of such process shall be derived in suits of admiralty and maritime jurisdiction, as well as in suits at common law and in equity, we come to the examination of the third section of the same act which provides that writs of execution and other final process issued on judgments and decrees rendered in any of the Courts of the United States, and the proceeding thereupon shall be the same, except their style, in each State respectively, as are now used in the Courts of such State, saving to the Courts of the United States *442 in those States in which there are not Courts of Equity, with the ordinary equity jurisdiction, the power of prescribing the mode of executing their decrees in equity by rules of Court.
Courts of justice may construe a legislative provision but they cannot repeal what is expressly enacted. When Congress, in plain and unambiguous terms declares that writs of execution on decrees rendered in any of the Courts of the United States, and the proceedings thereupon, shall be the same as are now used in the Courts of such State, it is not possible for this Court to hold that the decrees of one of the Courts of the United States are not embraced in that provision; especially not, as the very Court whose decrees it is said are excluded from the provision is specifically mentioned in the first section of the same act as one of the Courts of the United States, and its proceedings there made the subject of special and material regulation. Exclusive original jurisdiction in admiralty and maritime cases is conferred upon the District Courts of the United States, but the Circuit Courts hear such cases on appeal, and, as matter of daily practice, render decrees thereon for the payment of money; and it is not to be doubted, we think, that such decrees are as much within the provision under consideration as decrees in equity; and if so, no reason is perceived why the same rule should not be applied to decrees of a like character rendered in the District Courts. Undoubtedly Congress intended by that provision to adopt the State laws in respect to the proceedings on final process as they existed at the date of the act, and the effect of the enactment, or one of its effects, was to render judgments and decrees for the payment of money rendered in the Federal Courts a lien on the land of the debtor in all cases and under like circumstances as when rendered in the State Courts. Under the earlier process acts this Court twice decided that the laws of the States furnished the rule of decision in respect to the lien of judgments and decrees rendered in the Federal Courts upon the land of the debtor, and since the passage of the act under consideration it has been twice affirmed by this Court as a matter of history that the act was passed to confirm the view expressed in those decisions. Beers et al. vs. Haughton, (9 Pet., 361); Ross et al. vs. Duval, (13 Pet., 64).
*443 Perfect coincidence of opinion upon the subject appears to have prevailed throughout between Congress and the Court, and on all sides apparently the endeavor has been to assimilate the proceedings in the Federal Courts for the levying of executions issued on judgments and decrees for the payment of money to those prevailing in the Courts of the States. Strong confirmation as to the views of Congress upon the subject is derived from the 4th section of the Act of the 4th of July, 1840. 5 Stat. at Large, 393. By the fourth section of that act it is provided, that judgments and decrees hereafter rendered in the Circuit and District Courts within any State, shall cease to be liens on real estate or chattles real in the same manner and at like periods as judgments and decrees of the Courts of such State now cease by law to be liens thereon. District Courts, as is well known, exercise no jurisdiction in equity; so that the inference is a very strong and indeed a conclusive one, that the reference to decrees, so far as that Court is concerned, is solely to decrees in admiralty for the payment of money.
Imprisonment for debt also and the computation of interest upon judgments in all civil cases, both in the Circuit and District Courts, are by Acts of Congress expressly referred to the laws of the State for the rule of decision and the ascertainment of the rights of the parties. 5 Stat. at Large, pp. 320, 410, 515. Usage, however, it is said, is opposed to such a construction of the provisions under consideration, and reference is made to authorities to show that in England an execution issued on a decree in the admiralty never runs against the land of the debtor, which may well be admitted, but the reason for the restriction must not be overlooked, which is, that Courts of Admiralty in that country are not regarded as Courts of Record. Under the Constitution, the judicial power of the United States is vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. Such judicial power extends to all cases of admiralty and maritime jurisdiction, as well as to the cases of law and equity described in the Constitution.
When the judicial system of the United States was organized *444 exclusive original cognizance, of all civil causes of admiralty and maritime jurisdiction was conferred upon the District Courts. Appeals in certain cases were allowed to the Circuit Court, but neither an admiralty or an equity cause could be brought here from the Circuit Court in any other mode than by writ of error. 1 Stat. at Large, 83. Later regulations allow appeals, but they place causes in equity, and admiralty and maritime jurisdiction, upon the same footing. 2 Stat. at Large, 244.
Circuit Courts, as well as District Courts, were created by the Act of Congress establishing the judicial system of the United States, and the latter as well as the former are Courts of Record. No one ever doubted the fact, and consequently it is not necessary to enter into any argument to prove it. These considerations lead necessarily to the conclusion that the answer to the first three questions must be in the affirmative.
5. Before proceeding to answer the fourth question submitted, it becomes necessary to advert very briefly to the state of facts bearing upon the point as exhibited in the transcript. Execution was issued on the decree in favor of the complainants, and the marshal duly levied the same upon the several parcels of land described in the bill of complaint. They are, therefore, interested in the title to the subject-matter in controversy, and inasmuch as the statement of the case shows that rights and interests in and liens upon the, lands of a conflicting character are claimed by the other parties, they, the complainants, were entitled to the discovery and to so much of the relief prayed for as has respect to the ascertainment and determination of the rights and interests of the parties and the dates and validity of their liens upon the said lands. Equity will not allow a title to real estate, otherwise clear, to be clouded by a claim which cannot be enforced either at law or in equity, and consequently will interfere in behalf of the holder of the legal title to remove a cloud on the same, or an impediment or difficulty in the way of an effectual assertion of his rights in a Court of law. Such interference cannot be sustained unless the complainant shows some title or interest in the land: but it makes no difference whether such *445 title or interest was acquired by the levy of an execution issued on a judgment at law, or on a decree in equity or admiralty for the payment of money. Complainants' rights and remedies are precisely the same as they would have been if the execution levied on the land had been issued on a judgment at law or a decree in equity for the payment of money. Jurisdiction in equity to remove a cloud from the title of the complainant is fully maintained by the modern decisions of the Courts, and so generally is the principle acknowledged, that all doubt upon the subject may be considered as put at rest. 1 Story Eq. (8th ed.) secs. 700, 705; Hamilton vs. Cummings, (1 John. Ch. R., 522); Pettit vs. Shepherd, (5 Paige Ch. R. 501).
Where the respondents claimed an unfounded lien on certain real estate of the complainant, and it appeared that such claim prevented purchasers of the estate from making payment of the stipulated price, it was held in Chipman vs. Hartford, (21 Conn., 488), that the complainant was entitled to a discovery and to have the cloud removed from his title; and, in enforcing that conclusion, the Court say that where an instrument is outstanding against a party which is void, or an unfounded claim is set up, which he has reason to fear may at some time be used injuriously to his rights, thereby throwing a cloud over his title, it is a well recognized principle that equity will interfere and grant the appropriate relief. Downing vs. Wherin, (19 N.H., 91); Tanner vs. Wise, (3 P. Wms., 296); Overman vs. Parker, (1 Hemp., 692); Clark, et al., vs. Smith, (13 Pet, 203); Lounsbury vs. Purdy, (18 N.Y., 515). Applying these principles to the present case it is clear that the complainants were entitled to a discovery and to have the cloud removed from their title, but equity will not interfere under the circumstances stated, to decree that the lands shall be sold and the proceeds applied as prayed in the bill of complaint. Affirmative answers must be certified to the first three questions, and to the fourth, that the complainants, under the demurrer, are entitled to so much of the relief prayed for as has respect to the removal of the cloud upon their title to the land described in the bill of complaint but that the real estate mentioned cannot be reached by proceedings in chancery to satisfy the aforesaid decree.
*446 Mr. Justice GRIER, dissenting.
I feel bound to express my dissent from the majority of my brethren in the opinion just delivered.
It is now seventy years since the establishment of Courts of Admiralty in these States, yet it seems that the boundary line of their jurisdiction is not yet settled. During all this time it has never been supposed that the definitive sentence or decree of a Court of Admiralty was a lien or could be levied on lands. The dominion of the Admiral was over the sea  the ships and men who frequented it  their contracts and their torts. His Court proceeded either against the ship or the person of the owner, by arrest of the thing or the person. When either was arrested, they could be released by entering into stipulation with approved sureties (fide jussoux,) who consented that execution should issue against their goods and chattels in case of default.
There is no process known to Courts of Admiralty for seizing or selling land. But it is said that this process is authorized by the process Act of March 19, 1828.
It is now thirty-five years since that act was passed, and now for the first time, it has been alleged that this provision lay hid within its sections. The twenty-first rule regulating the practice in admiralty, made by this Court in 1845,  seventeen years after the passage of the act,  shows that this Court had then no suspicion of the hidden meaning of the third section, which has now been brought to light. If they had supposed that this statute had made lands subject to lien by the decree of a Court of Admiralty, they would have devised some process for taking them in execution and selling them. The first section of the act ordains that the forms of mesne process, &c., should be the same in Courts of common law as are used in the highest Courts of original and general jurisdiction of the States; and in equity according to the rules and usages which belong to Courts of Equity; but "in those of admiralty jurisdiction, according to the principles, rules and usages of admiralty as contradistinguished from Courts of common law."
The third section, which directs process of execution, speaks *447 of judgments and decrees in any of the Courts of the United States, and ordains that it shall be the same except in their style, as now used in the Courts of such State. Now as there are no Courts of Admiralty in any State, to what rule was the process of Courts of Admiralty to conform? Is it to those of these Courts of Common Law or Equity? The act provides that in States where there are no Courts of Equity, the process may be prescribed by rules of Court.
The whole argument of this new construction of this section is founded on the word "any," which is construed in its most expansive sense, in spite of consistency in the act, and the evident intent of the legislation, as exhibited in the whole statute.
This innovation in the jurisdiction of Admiralty Courts introduces a lien, unknown to the laws of any State.
The lien of judgments is a rule of property, which it is beyond the power of this Court to establish. Congress has been careful not to attempt the exercise of such a power; and only adopts the State rules in cases where, if the judgments or decrees had been in a State Court, they would have operated as a lien. Congress never intended by this oblique way, to create, what would in fact be, (to a large portion of every State,) secret liens.
I believe that the construction which this act has received for thirty-five years past is the true one, and beg leave to protest against this introduction of a new one, which utterly disregards "the principles, rules and usages of Courts of Admiralty as contradistinguished from a Court of law."
I am confident such was not the intent and meaning of Congress. The result of this doctrine may be, to bring us into conflict with the State Courts, who may refuse to recognize titles to land obtained through the process of Maritime Courts.
Mr. Justice CATRON joined with Mr. Justice Grier in the dissent. The other Judges concurred in the opinion of Mr. Justice Clifford.